Case number 25-5352 and 25-5391 Donna Dutton v. Jimmy Shaffer. Oral argument is not to exceed 15 minutes per side. Mr. Wiest, you may proceed for the appellant. Good afternoon, your honors. My name is Chris Wiest. I represent the appellant, Judge Donna Dutton. May I reserve five minutes for rebuttal? You may. Your honors, this case presents a fundamental yet recurring issue. May the Kentucky Judicial Conduct Commission punish or threaten to punish a judge or judicial candidate under a bevy of judicial conduct rules for engaging in truthful or opinion issue-related speech in the course of a judicial campaign, including based on the specific viewpoint that the judge expresses on that issue? Relatedly, does the label the government puts on that speech matter? And respectfully, your honors, the Supreme Court has answered that question in white, and this court has repeatedly answered that question in Kerry and Winter with a resounding no. The facts are not complicated. Judge Dutton made a statement to the Sentinel News in Shelbyville, Kentucky. It was three sentences in which she said that issue, and she's referring to prior discipline, involved the theft of a large sum of money by an attorney who also happens to practice law with my opponent. I let my personal feelings about the theft interfere with my courtroom conduct, and for that, I apologize. No litigants were affected by my actions, and the only person hurt was me. And for that speech to a newspaper in the course of an election, the defendants sent her a letter indicating that complaints had been filed against her. But part of your challenge is a facial challenge, so the facts of this case don't matter much. And I guess the problem I have with the facial challenge is the statute is written in a way to essentially codify the New York Times versus Sullivan standard for defamation in the political context. So if we were to find this facially unconstitutional, it would, in effect, suggest that the court's own standard is unconstitutional, and I'm struggling to see how that can be the case. Your honor, I think the problem, and you're talking, I think, specifically about the 4.1a challenge to the false statements. The issue, I think, here is the interpretive comment that the Kentucky Supreme Court has put on it, the comment 12. And that comment, I think, takes it out of what I would call the Sullivan standard, in which they say judicial candidates must be, quote, scrupulously fair and accurate in all statements made by them and their campaign committees. And so that's the gloss they put on what probably would otherwise be a facially constitutional standard. And in doing that, we really get into misleading speech. We get into some of the issues in Winter in which, because they have put this gloss on it and have effectively codified an unconstitutional over-breath problem, that, I think, is what renders 4.1a11 unconstitutional. So I readily can see applications that would be unconstitutional. But when I think of a facial challenge, you ask about whether the core—and I just really struggle to see how the core of the rule itself, setting aside the comment, is going to cover a lot of statements, knowingly false statements. So, like, take Alvarez. If a judicial candidate said, vote for me, I won the Congressional Medal of Honor, it strikes me that—I know Alvarez said it was unconstitutional in the abstract to penalize that, but it clearly said if it would cause harm, then you could punish it. And this would be the context where I would think it would cause harm. And there are plenty of applications that would be perfectly constitutional. I think the standard for a facial challenge is quite difficult for you to surmount. Your Honor, two points to that, I think, on the facial challenge. First, we are dealing with a First Amendment challenge, and so it is a relaxed standard. In Kerry and other cases, I think it comes ultimately from United States v. Stevens, it's whether a substantial number of applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep. And because we've got this comment 12, and they are sucking in, if you will, all of the misleading statements, everything that this Court has said they can't do in Winter and, frankly, other cases. Because they're doing that, I do think we've got an overbreath challenge here in this First Amendment context. And then we've got a second problem that also gets to facial invalidity, and that's void for vagueness, right? The Gentile Reno v. ACLU line of cases where we've got a fair notice problem here, because woe to the candidate that doesn't speak just the way that these particular appellees desire. And, you know, problematically, I know we've got the, and I'm sure we can have a 408 discussion if you'd like, but we've got this order that they put out, this proposed public reprimand order, where they talk about her failing to appreciate and downplaying prior discipline in a way that they don't like. Really, it's a viewpoint discrimination issue, and it's a vagueness issue. And as you're aware, Your Honor, it's not only overbreath. The void for vagueness also results in facial invalidity. And either path gets us there. Obviously, as applied, we're right in what I would call the center of winter, where they're applying, frankly, all three canons. Can you, can I, can I ask you, maybe, the way you kind of briefed it as you went canon by canon? Yes. Why isn't, why isn't another way to think about it, rather than asking whether, whether this specific speech would be protected as applied to this canon? Why not just ask, is the speech protected by the First Amendment? And you don't really have to get into the canons. You just, is, is there, is there a historical basis for prescribing this speech? Now, I think if it was false, that that would be one theory setting aside the canon for why it would be prescribable. But it's not obvious to me why it would be prescribable for any other reason, other than if it's sufficiently false under the New York Times versus Sullivan standard. And then we could just, I just don't see why we would go rule by rule. I don't think you have to. And I think certainly this was in our briefing, but the discussion by Chief Judge Sutton and Tyler, where he says, it doesn't matter the label that the government puts on protected speech, it's sufficient that it is protected speech. And I think that's, that's the challenge. It doesn't matter what label they put on it, it is protected speech. And obviously on the falsity, we've got, you know, absolutely no evidence that anything she said was not false. All evidence is that what she said was false. And there's no dispute that her husband told her, at least in terms of the theft, yeah, he stole from me. And by the way, here's the check where he had to write back the client funds. There's no, I don't think there's any reasonable dispute that she believed that it was true when she made the statements about the theft. So on that front, as applied, we should win across the board. I think the district court erred in that regard by making it- I mean, there's some room for debate on the other two, I suppose. If you ask a lawyer what is practicing law with, most people would think a partnership relationship. So it's certainly a plausible reading, I suppose, to think there's some type of it's not enough that there'd be a plausibly false reading. Wynter commands, and when you look at Chief Judge Sutton's discussion in Wynter, Wynter commands that if there's an arguably true reading, that it's protected speech, right? The innocent construction rule. And here, right, practice law, I mean, my co-counsel on this case, Mr. Bruns, and I do a lot of cases together. There's no dispute that, at least in terms of practicing law, Seibert and Tomlinson shared office space, shared secretarial support, covered cases for each other. No dispute about that. And on that front, I think it is reasonable to say that they practice law together on those facts, without being in a formal partnership. Just as people, I think, could fairly say that my co-counsel and I, because we co-counsel on cases, that we practice law together. I mean, that's not- she never said they're in a formal law partnership, they're in partnership together. She just said they practice law together. I think that that's truthful, or at least under the Wynter standard, you know, a construction of that is truthful, which is sufficient for First Amendment protection. So, regarding the theft of a large sum of money, what happened to the JCC- well, it wasn't a judge, but the disciplinary proceeding, as I understand it, they just didn't pursue it? Or was there a finding that it was not substantiated or that it didn't happen? What happened there? I think the Kentucky Bar Association, as we understand it, just dropped it. Obviously, in the record is undisputed evidence of the repayment of $2,100. The check returning client funds that Tomlinson had, that was in the record, that's not disputed that that check was written. And, obviously, Mr. Dutton put on an affidavit that, yes, he took the money from me. He took the client funds, the client incoming payment, kind of walked out the door with them, and he took it. There's no evidence to the contrary in this record of anything other than that, nor is there anything that disputes the fact that Mr. Dutton told Mrs. Dutton about the theft and, you know, that she absolutely believed it. Why was the check only $2,000 if he claims that there was $20,000 in theft, $25,000 to $50,000? The $2,100, Your Honor, was what he returned that were client funds, that were retainer funds. The rest were receipts due the firm from basically client billing that he took out the door and he deposited. The one was escrow. The rest was what I would call general firm receipts that Tomlinson walked out the door with. Yeah, I'm sorry, Judge White. I didn't mean to cut you off if you had a follow-up question. No, one might debate whether $2,500, $2,800, whatever the check was, is a substantial sum of money. Certainly, Your Honor. If it's debatable, again, we're back to innocent construction. I mean, I think whether it's large, whether it's small, it's probably an opinion at the end of the day. You know, depending on who you ask and where they're at may depend on whether or not they think $2,100 is large or small. Is it crucial that this was a statement made in the course of the campaign? It was made. It was made to the paper in the course of the campaign, yes. No, I asked is it crucial that it was such a statement? I think so because obviously there's the discussion in Kerry in a winter that puts it within plain First Amendment protection. If this were on the bench conduct or statements, we could be in an entire other line of cases, you know, employee speech and things like that. I think it does matter here because it's unquestionably protected. And how do we avoid getting into situations where where every judge who's disciplined runs to this court for a declaration that what they said was arguably true? Your Honor, two points. I think one, you know, we are just talking about campaign speech. And two, our federal courts are in the business of protecting constitutional rights, including and especially perhaps in the course of campaigns. And what would you say had the facts been that the disciplinary, the state bar, whatever, whoever does it in Kentucky, that they actually investigated the allegation of theft and concluded that there wasn't any? Would we be talking about a different case or would it be the same? I don't know. I mean, I think it may be, you know, I think it would be a little closer, perhaps. You know, if if somebody investigates and says, yeah, we weren't able to substantiate it, you know, is that, you know, what does that look like? Was it was it was their investigation adequate? Was there a hearing in which people testified and there was an adjudication? Is there a res judicata issue? I think I think the circumstances matter there. Okay, so no further questions. You'll have your full rebuttal. Thank you. We'll hear from counsel for the commission. All right. Good afternoon, everyone. Your honors. My name is Olivia Amlong. I represent the Kentucky Judicial Conduct Commission and its members and executive secretary named here in this matter. May it please the court and counsel. The First Amendment protects robust debate in judicial elections, that is certain, but it does not prevent states from enforcing narrowly drawn rules that prohibit knowingly or recklessly false campaign statements and protect the integrity of the judiciary. Indeed, without public confidence in a fair and impartial judiciary, the cornerstone of our justice system crumbles. This is a case that deals with much more than just is it a theft or is it not? This is about a judge who was disciplined for a whole slew of issues, who is now trying to put self-proclaimed political spin on her discipline to convince members of the public to vote for her. With respect to the facial challenge, Judge Murphy has really hit the nail on the head. The record is entirely devoid of any type of a contemplation of how this is largely going to be interpreted in an unconstitutional way. It is the plaintiff, Judge Dutton's, burden to bear that, and the record is devoid of any other circumstances other than the application here that is actually an issue. That constitutional facial challenge then will necessarily fail. Can I ask you, on that point, I guess it's closer to the as-applied point, but it seems like you conceded in your brief that if it doesn't meet the standard of falsity that we set in Winter, that the other two canons, the ones that are not about false statements, would simply not apply. All three canons, in effect, all three violations turn on some notion that what she said was false. I can certainly see the argument for that. So, in my briefs, and I apologize if there was confusion, that was a direct response to essentially the cascading effect that Judge Dutton has raised on appeal. Her contention that, well, you can't find an as-applied violation with respect to Rule 4.1, but not the others. There, yes, with respect to the truth and falsity and the cascading effect that Rules 1.2 and 2.4 have, yes, they do rise and fall. But those rules, 1.2 and 2.4b, certainly can have additional application notwithstanding the truth or falsity. These facts are very unique. So, I agree with you that there's plenty of application for other facts. I was just curious with respect to this case, if those were just essentially, and it seems legitimate to me to say that, you know, you have dishonored the judiciary under the one canon if you make a false statement. But if it's not false, then it's hard for me to see why that provision would be violated. Well, certainly, Your Honor, we're also talking in hypotheticals here. Although I know I have sung it until I'm blue in the face, these rules were never actually applied. These rules were proposed in a communication as an attempted settlement discussion about what, if anything, Judge Dutton would be willing to say, yes, I agree I violated those. Let's agree to something and be done with it. It is my job now, of course, to tell you that I think there are other circumstances in which one could reasonably beg the question, are 1.2 and 2.4b implicated? And that is because Judge Dutton was disciplined for making a bold-faced threat against an attorney in her courtroom. Mr. Tollinson won't be conflicted out forever. Here we are two years later, and she is continuing to take public aim at a practitioner in her court, someone who she has overtly said, I'm going to come for you at some point. You can't avoid me forever. We have certain types of professional expectations, not even just as judges, but as attorneys in general. Even the Kentucky appellate courts have recently got into the habit of chastising attorneys who take public aim at one another in briefing. The same rules certainly apply to the way that attorneys are treated by the judges. There are other rules that directly address that as well. So what happens when you're in the situation where a judge is publicly, as Mr. Tollinson would describe it, slandering him for the sake of garnering a campaign benefit to herself? That goes to whether it was true or false, and it seems to me Mr. Wiest has a pretty good point that the only evidence in the record at this summary judgment suggests that it was a true statement that her husband put in a declaration saying he took client funds as well as firm funds, and there's the check. So what evidence is there to suggest it was in fact a slander? Well, while there is an affidavit that says yes, money was repaid back, the entire record from the underlying proceeding has been abundantly clear as well as the underlying complaint that was filed that it was not a theft but a dispute over the fee arrangement between Mr. Dutton and Mr. Tomlinson. So while yes, there is an affidavit from Mr. Dutton saying yes, this was a theft, theft means something and he's also frankly not the final arbiter of what constitutes theft according to law. We have this opinion by him which Judge Dutton has codified as her truth, but the truth is not necessarily malleable. But don't you have a duty at this summary judgment stage to present evidence that it wasn't in fact a theft? And again, I'm just not seeing the evidence. I see the Kentucky Bar Association not issuing sanctions or refusing to go after Mr. Tomlinson, but I don't know that that's enough to create a genuine issue of material fact that it was in fact false. What else is there? So in the record during her deposition, there is actually testimony that didn't say that the Kentucky Bar Association neglected to pursue it, but instead that Mr. Dutton said, I'm moving on from this, I'm not pursuing it. But what we do have in the record as well is that even though I asked Judge Dutton, you know, do you have any personal knowledge of this theft? Her response to me was, I quote, I don't have anything to do with his practice. Gilmore was mad. Tomlinson stole money, but I don't know the specifics of how it all occurred. I don't work in my husband's office. I don't know exactly how it occurred, but he was very mad. We have this general sweeping conclusion that yes, a theft occurred. That's not enough. It's not enough under the summary judgment standard and it's certainly not here. To your point about, well, doesn't the JCC have the obligation then to prove that it was in fact false? That's where the JCC is stuck in a real rock and a hard place. Under the Supreme Court rules, the Judicial Conduct Commission's function is dual in nature with very specific and clear-cut parameters of how these cases proceed. Under Supreme Court Rule 1.470, this was in the preliminary phase, an investigation. The JCC is not charged, nor would it ever predetermine what is going to happen in the second due process phase of did this actually occur. The JCC just needs to know there's a question that it can assess and then say, is there enough to pursue formal charges? While in a perfect world, the JCC would be able to wrap this up into one big fell swoop and prove its case here and now, that has implications for the remainder of the process, which is also required to do by Kentucky Supreme Court rule. So while certainly... But don't you think you have... So I agree that you can't issue state sanctions in a federal proceeding. It seems to me you do have a duty to present evidence that the speech would not be protected under the First Amendment in a First Amendment challenge. So setting aside specific rules or procedures there, why couldn't you have... If you presented evidence and created a fact dispute that this statement was false, then I think you would have undercut any notion that it should be protected by the First Amendment. But without that evidence, I just don't see how we cannot conclude that it would be protected because it's not a false statement in a political campaign. So that I would just look to Mr. Tomlinson's complaint, the underlying spearhead of this entire question, him saying this wasn't a theft, it was a dispute. And that's a question of fact enough to at least survive summary judgment. But there's also more than a question of fact and falsity about the theft itself. There are other components of Judge Dutton's statements that are materially and patently false. For example, the third sentence of her statement to the Sentinel News that says, no litigants were affected by my actions and the only person hurt was me. She fails to appreciate that the underlying underlying complaint back in 2020 that even started this whole situation was filed by her own colleague who felt very, very uncomfortable by Judge Dutton coming to her saying, you need to recuse. This is my business. You need to recuse. Even in her own testimony, in this case, in the record, Judge Dutton confirmed that she went to Judge Bullock and said, hey, after this has been reassigned to you, you just need to recuse. This is a contentious issue. It's about me and my family, and you just need to recuse. I know you're a new judge. I'm just trying to look out for you. To say that no litigants were hurt when not only did she have to recuse because of her commentary to her counsel and the ongoing dispute that they had, had that been the only conduct that she had taken, her point might be well taken that, okay, the delay was only recusal, and that's nothing that I could have done anything about. But after she recused and the case was reassigned to her district court counterpart, she went out of her way to make sure that other judge recused as well, causing further delay to Mr. Carter's adjudication of his criminal case. To say that no litigants were affected is a very, very sweeping statement. And what about, so what did you, I can see what you mean about the intimidation of the lawyer. Why didn't you put in an affidavit or something from Tomlinson saying, I felt intimidated by this? I take it there's no such evidence in the record? There is not. Okay. But that, so then does, that means we can, can we rely on anything to suggest that, that Tomlinson himself might've been harmed? By way of sworn testimony, I suppose there isn't any, but I think it would be a far cry to say that an attorney who's directly threatened by a judge in front of whom they regularly practice would not be affected by this. I would think that's a, at least in my opinion, fair assumption. But even so, the fact that she had these conversations with her judicial counterpart and continued to interfere, she interfered with Mr. Tomlinson's ability later to try and get a copy of this video. All of those things, maybe not overtly delaying Mr. Carter's criminal proceedings, they certainly affect him. When you as a judge are using your influence to manipulate the system and access to public records in the justice system, you are affecting people. But what makes this case so incredibly egregious by way of her flippant commentary about how no one was affected is when you look back at the 2016 winner case and the underpinnings of why the court focused on the material falsehood or lack thereof in that case of the statements that were made. The court in that case said, however much or however little truth bending the public has come to expect from candidates for political jobs, judges are not politicians and a state's decision to elect a judiciary does not compel it to treat judicial candidates like campaigners for political office. This was not some free exercise of political debate. This wasn't a statement made offhand during a live unfolding situation. As Judge Dutton described it, this was a submitted request for a response from the Sentinel News that she, quote, had her campaign manager, quote, put the best spin on it that she could and submit it back to the Sentinel News. To the extent that ambiguity has to be permitted in some ways to protect the free debate that comes naturally with campaigning, that's not what happened here. This was a calculated move. Oh, well, I don't think that's fair. I mean, I go back to Judge White's point about how it was a response in a political campaign where her adversary was trying to use this against her, and you would establish a rule that she effectively has to remain silent. That strikes me as why shouldn't the rule be it should be for the people to decide? Kentucky has decided to have elections of judges, and it seems quite unfair to say that she didn't proactively do this. She did this in response to her adversary in the election, accusing her of not being a qualified judge because of this prior misconduct. I think she had every right to talk about what it was and why it did not disqualify her. Respectfully, Your Honor, I would say there's a difference between being able to editorialize as you see fit and desire versus simply saying, I'm proud of the work that I've done, because in fact, that latter statement she did make at the very end of the Sentinel News article, she even said for the last 16 years, I'm very proud of the work that I've done and all of the people that I've helped. There's a difference between making material falsehoods that would mislead, but more than just mislead, actually misinform the average voter who's going to hear what she has to say and make a decision about who is entrusted with the privilege of being judge. There are different ways to say what she's trying to communicate by no one was hurt here and it really wasn't that big of a deal. This wasn't it. Say no one, right? She didn't, she said no litigants were affected by my actions and then she said and the only one hurt was me. Correct. Which is a little different. Certainly, and that is quite the point. Your Honors, we would respectfully request that you strike down the prior ruling on the as-applied challenge to 4.1 and over and uphold the remaining determinations made by the district court. Thank you. Okay, thank you. Thank you. We'll hear a rebuttal. Your Honor, a few points and I think you really narrowed in on the issue here. The only evidence in terms of this theft, and I agree with my colleague, Judge Dutton didn't have personal knowledge about it. She truthfully told in her deposition that, you know, it was information she got from her husband. And so the only information in this record that we have on this theft is a document 42-12 at page ID 738 to 739 in which Gilmer Dutton testifies under oath, under oath, and so we've got competent summary judgment evidence, that Mr. Tomlinson, quote, had diverted and kept for himself client fees that were to be paid to my law firm or placed in escrow for future services and or costs for clients. That's the sum and substance of the total of the evidentiary record. And the notion that somehow some unsubstantiated complaint can create an issue of fact is contrary to the summary judgment standard of federal court. If they wanted to create an issue of fact, if they thought they could do so, they had the obligation to do so throughout the prolonged discovery period in this case, and they failed to do so. One of the things that troubled me in hearing the argument was this notion of being not happy about the, quote, spin that Judge Dutton put on the prior discipline. And when we get into cases like Gentile versus the state bar in Nevada, and we talk about the void for vagueness doctrine, the reason that that exists is to prevent discriminatory enforcement in which a government actor decides that they don't like being criticized themselves. And that fundamentally is what we have here. They don't like the spin. They don't like the, and let me quote, Judge Dutton fails to appreciate, this is in the agreed order that they sent over, Judge Dutton is attempting to downplay the prior discipline. In other words, Judge Dutton is talking about an issue that was front and foremost in this campaign, which White says she's allowed to do. She's allowed to talk about issues in a campaign. And in this case, it was the issue of her prior discipline, and she's allowed to put her take on it. They don't like it, but that's not their place under the First Amendment. Whether or not they like it, whether or not they agree with it, whether or not they agree with her opinion about who was hurt or who wasn't, as an aside, there is the concession by their 30B6 witness. This is at page ID 687 of Ms. Schaefer's testimony in which she says, yeah, I've got no evidence that any litigants were harmed whatsoever. In fact, Judge Dutton recused later that day, Carter gets continued out a week, and then Carter enters a plea and Carter's done. Okay. What about the allegations of intimidation of the lawyer? That could be concerning. What's the response there that the lawyer in some respects might be harmed if you don't feel comfortable practicing in the county in which you practice? Two points to that, Your Honor. First of all, the lawyer wasn't even there that day. There was a stand-in, and the Commonwealth was the one that brought up the fact that because the lawyer had previously worked for her husband had said, you know, she's not going to have to recuse forever. And she said, yeah, I'm probably not going to have to recuse forever. I think we've got another mountain out of a molehill here. But again, she recused later that day. And there's no evidence that I'm aware of to where even to this day, I think she's still recusing, including because of this litigation in cases that he's involved in. So I don't know how he could be intimidated if he's got an ongoing recusal from her. And at the end of the day, he's not a litigant. And there's no evidence that he was harmed whatsoever throughout all this. There's no affidavit from him. I would have probably enjoyed taking his deposition and discussing what happened, but they didn't notice him up. And you know, that's not in the record. There's no evidence of anyone being harmed here, certainly no litigants. And there was the concession by Ms. Schaffer that there was no harm to any litigants. So on this record, we've got opinions, we've got truthful speech. We certainly have an as-applied challenge to her statement to the Sentinel News across the board. And depending on what the court thinks about comment 12 and its application to 4A11, we may have a void for vagueness problem and possibly overbreadth on the Stevens overbreadth problem. I think it's a close call. I think comment 12 is a backdoor to get misleading speech back in and prohibited in Kentucky. Maybe it's a facial invalidity of comment 12, that they cannot enforce comment 12, but they can enforce the 4A11. Maybe that's a narrow, you know, facial injunction that should be entered in this case, because I think comment 12 is what makes facially the false statements provision very problematic. If there's no more questions, your honor, I will rest. Okay. Well, thank you both for your excellent advocacy today. And the case will be submitted and the court can adjourn, the clerk can adjourn court.